UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | DOCKET NO.  2:17-cr-158-JDL |
| ) | |
| RASHAD SABREE ) | |

**MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS
WITH INCORPORATED MEMORANDUM**

**Summary**

The police lacked a "reasonable suspicion of wrongdoing" when they stopped the car Sabree was driving on January 5, 2016.  The stop was based exclusively on information from a single uncorroborated and unverified informant.  The totality of the circumstances fail to satisfy the *Terry v. Ohio* standard and the stop violates the Fourth Amendment of the U.S. Constitution. Sabree seeks suppression of the stop results including all police observations, evidence collected or statements made by Sabree or any passenger, all of which is the result of the improper stop.

**Facts**[1]

On January 5, 2016, at approximately 1:40 p.m., Maine State Police received a phone call from sixty-five year old Brad Rose ("Rose").  Audio File, Call to SP Gray, R002-0001.

---

[1] The facts are compiled from the discovery provided by the Government.

1

Rose informed the dispatcher he was unsure of what he saw. Audio File, Call to SP Gray. Rose later stated that he was unsure whether this was something he was even suppose to report. *Id.* Rose described a black or dark green Toyota Rav4 with Massachusetts's plates with a "933" in it heading south. *Id.* Rose stated that there was a male operator and a female passenger. *Id.* He stated that the male operator "whacked" the female passenger and had drawn blood. *Id.* Rose also mentioned he was driving a pick-up truck and that he had only caught part of the license's plate. *Id.*

Maine State police alerted Kittery police. R002-0001. Kittery police were "advised that the vehicle was a green or black Toyota Rav4 being a Massachusetts registration plate with partial numbers of 933" and that "the male in the vehicle hit a female." R-ICE-015-0007. After a failed initial intercept, Kittery police stopped Sabree's vehicle at approximately 2:00 p.m. R-ICE-015-0007. The stop was based exclusivley on the information reported by rose. The police did not observed any traffic infraction, erratic behavior, mechanical defect, or any other public safety concern before making the stop. *See generally* R002-0001 & R-ICE-015-0001.

**Law**

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Court first recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. "This authority permits officers to stop and briefly detain a person for

investigative purposes, and diligently pursue a means of investigation likely to confirm or dispel their suspicions quickly." *United States v. Trueber*, 238 F.3d 79, 91-92 (1st Cir. 2001) (citations and internal punctuation omitted). "A law enforcement officer ordinarily may not stop someone and restrain his freedom to walk away unless the officer has a reasonable and articulable suspicion of criminal activity." *United States v. Cook*, 277 F.3d 82, 85 (1st Cir. 2002) (citation and internal quotation marks omitted). There is no precise definition for reasonable suspicion. *United States v. Ramdihall*, 859 F.3d 80, 91 (1st Cir. 2017) (citation omitted). Still, "[t]he reasonable suspicion test has been described as an intermediate standard requiring more than unfounded speculation but less than probable cause." *Cook*, 277 F.3d at 85. The police must have "a particularized and objective basis for suspecting legal wrongdoing.*"* *United States v. Pontoo*, 666 F.3d 20, 26 (1st Cir. 2011) (citation omitted).

Reliability of informant statements are, like reasonable suspicion, subject to a "totality of the circumstances" test. *See generally Illinois v. Gates*, 462 U.S. 213 (1983). Courts continue to look at both prongs of the old *Aguilars/Spinelli* test; first how and why the officer determined the informant to be credible, and second, the informant's basis for knowing the proffered information. *U.S. v. Khounsavanh*, 113 F.3d 279, 283-84 (1st Cir. 1997).[2] In *Khounsavanh* the court suggested, "what is needed is that the probability of a

---

[2] *Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969) (both cases over-ruled as too ridged in *Illinois v. Gates* which substituted the

3

lying or inaccurate informer has been sufficiently reduced by corroborative facts and observations." *Id.* at 284 (internal citation omitted).

Courts distinguish known from anonymous informants when evaluating the existence of reasonable suspicion. *United States v. Monteiro*, 447 F.3d 39, 44-45 (1st Cir. 2006) (discussing Supreme Court precedent pertaining to non-anonymous versus anonymous tipsters and their credibility in relation to reasonable suspicion). In *Adams v. Williams*, the Court was presented with a police officer making a *Terry* stop based on information passed from a known informant, who had approached the police officer's cruiser, and stated that a person in a nearby vehicle was armed and carrying drugs. 407 U.S. 143, 144–45 (1972). Because the informant was already known to the police officer, had provided him with information before, and had come "forward personally to give information that was immediately verifiable at the scene," the Court concluded that "the information carried enough indicia of reliability to justify the officer's forcible stop of Williams." *Adams v. Williams*, 407 U.S. 143, 146-47 (1972).

In *Alabama v. White*, an anonymous informant provided a highly detailed account of suspected criminal activity, and the Court found there was reasonable suspicion for the police's *Terry* stop. 496 U.S. 325, 327, 332 (1990). In this "close case," the Court stressed

---

current "totality of the circumstances" standard).

reasonable suspicion existed because the informant predicted the suspect's future behavior, indicating "a special familiarity with her affairs," and because informant's account had largely been corroborated. *Id.* at 331-32. In *Florida v. J.L.,* the Court was asked to assess whether reasonable suspicion existed based on the tip from an anonymous source. *Florida v. J.L.*, 529 U.S. 266, 270 (2000). In contrast to *White*, the *J.L.* Court concluded that the tip from this anonymous source "lacked the moderate indicia of reliability" given that the informant provided no predictive information to the police and that later corroboration of the tip did not substitute for having a reasonable suspicion of illegality justifying the initial stop. *Id.* at 271. *J.L.* requires that "the reasonableness of official suspicion must be measured by what the officers knew before they conducted their [stop]." *See id.* In *Navarette v. California*, the Court addressed a "close case" regarding the reliability of a tipster and use of such a tip as the basis for reasonable suspicion. 134 S. Ct. 1683, 1692 (2014). In finding there was indicia of reliability for the anonymous tipster, and reasonable suspicion for the investigatory stop, the Court noted the importance of an "explicit and detailed description of alleged wrongdoing" from a firsthand account in determining the reliability of the tipster. *Id.* at 1689 (citing *Gates*, 462 U.S. at 234).

**Argument**

The police lacked sufficiently reliable information allowing them to stop the Toyota Rav4. Applying the totality of the circumstances, there was a lack of reasonable suspicion for the initial stop of Sabree.

- The police did not know the Defendant.

- The police did not know Rose nor was Rose a known informer.

- Rose provided no predictive information.

- The police had no information about anything that occurred before Rose's call.

- The police observed nothing that would support a stop before pulling over Sabree.

- The entire basis for the stop is a short, bare-bones tip.

- All of police's information came from Rose, who admits he was not sure what he saw and whether there was anything worth reporting.

Rose lacks the reliability factors enunciated in *Adams*, factors which allowed the police in that situation to have a reasonable suspicion for a *Terry* stop. Unlike in *Adams*, Rose was not a person *known* to the police. 407 U.S. at 145-46. Rose was not someone the police had assessed for credibility. Rose, unlike the informant in *Adams*, had not "provided [the police] with information in the past," was not known personally to the police, did not provide his tip in person, nor was Rose warned or aware he could be prosecuted if he provided false information. *Id.* at 144-47. Although Rose gave a name, there was no police verification of the name given: Rose could have been anyone just making up a name. He was not a *known* tipster and does not meet the standard established in *Adams*. Rather, this is essentially an anonymous tip and must be evaluated for indicia of reliability providing reasonable suspicion for a *Terry* stop.

6

Rose did not express adequate "knowledge about [Sabree's] future movements [as to] indicate[] some familiarity with [his] affairs." *See J.L.*, 529 U.S. at 271. Rose merely describes a male driver and female passenger in dark colored Toyota Rav4 driving south. This is not enough to establish reliability. *See id.* at 272; *see also Monteiro*, 447 F.3d at 47. A general eyewitness claim says nothing about the truth or reliability of the claim. *Navarette*, 134 S. Ct. at 1693 (Scalia, J., dissenting). Although Rose indicates that he saw the male operator "whack" the female passenger and that blood was drawn, he also admits that he was not sure what he saw. He fails to mention the second female in the car. He provides no other assertions or details of ongoing criminal activity. Nor did the police dispatcher elicit any additional details of suspected criminal activity. Further, Rose volunteered that he was unsure of what he saw. "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their [stop]." *J.L.*, 529 U.S. at 271. Here, the basis for the police's initial stop was a single, uncorroborated, general tip, which is insufficient for reasonableness.

The information available to the police before they stopped the Defendant did not amount to a reasonable and articulable suspicion supporting a *Terry* stop. Viewed in its totality, the police lacked "a particularized and objective basis for suspicion" as required by *Terry* and it's progeny. Lacking reasonable suspicion to stop the car, the balance of the interaction must be suppressed as "fruit of the poison tree." There can be no search of the car nor questioning of the occupants without the unconstitutional stop of the car.

**Conclusion**

Following a testimonial hearing the Defendant asks the court to grant this motion, find the stop violated the Fourth Amendment, and suppress all aspects of evidence, observations and statements gathered by the police following the stop.

DATE:  March 1, 2018                                       /s/ *David Beneman*

                                                                                David Beneman
                                                                                Attorney for Rashad Sabree

David Beneman
Federal Defender
P.O. Box 595
Portland, Me 0412-0595
207-553-7070 ext. 101
David_Beneman@fd.org

## CERTIFICATE OF SERVICE

I, **David Beneman**, attorney for **Rashad Sabree**, hereby certify that I have served, electronically, a copy of the within " MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS WITH INCORPORATED MEMORANDUM"  upon **Julia Lipez**, AUSA and **William Nolan,** AUSA, via the ECF system.

                                                                                /s/ David Beneman
                                                                                David Beneman

DATE: March 1, 2018